UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

In re:

   ANNE S. HALE,                                             Case No. 11-33589-dof
                                                       Chapter 7 Proceeding
                 Debtor.                                  Hon. Daniel S. Opperman

_____/

ANIMAL BLOOD BANK, INC,
MICHAEL W. KAUFMAN, and
PATRICIA M. KAUFMAN,

    Plaintiffs,

v.                                                                     Adv. Pro. No. 11-03501-dof

ANNE S. HALE,

    Defendant.

_____/


OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

    The matter before the Court is the Plaintiffs' Motion for Summary Judgment, in which the Plaintiffs argue that they are entitled to summary judgment on their §§ 523(a)(2)(A), (a)(4), and (a)(6) counts based on the collateral estoppel effect of an Order issued by the United States District Court for the Eastern District of California granting the Plaintiffs' Motion for Default Judgment and determining that the Defendant committed fraud, breached her fiduciary duty, and misappropriated trade secrets.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334 and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

The issues before the Court arise from Title 11 of the United States Code and are therefore within this Court's jurisdiction pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Anne Hale ("Defendant") filed her Chapter 7 bankruptcy petition after ten months of litigation with Michael and Patricia Kaufman and their company, Animal Blood Bank ("ABB") (collectively referred to as "Plaintiffs"), in the United States District Court for the Eastern District of California ("California Court"), *Animal Blood Bank, Inc. et al. v. Hale*, Case No. 2:10-cv-02080-KJM-KJN.

Michael and Patricia Kaufman formed ABB as a California corporation in 2002. ABB is in the business of providing animal blood and blood products to the veterinary industry.

In general, the California Court case arose out of the merger of the Defendant's company, MidWest Animal Blood Services, Inc. ("MABS") with and into ABB. The merger closed on July 16, 2008. The Defendant was the president and chief executive officer of ABB from June 22, 2008, until her resignation in May of 2010. Over the course of her relationship with ABB, the Plaintiffs allege the Defendant breached her fiduciary duties to ABB, breached her contracts with the Plaintiffs, defrauded the Plaintiffs, and misappropriated ABB's trade secrets and proprietary information.

The Plaintiffs filed a complaint in the California Case on August 4, 2010. The Defendant filed an Answer and Counterclaims on October 8, 2010. On August 3, 2011, the Plaintiffs' counsel filed a Notice of Filing Bankruptcy as to the Defendant. On October 24, 2011, the district judge stayed the California Case due to the pendency of the Defendant's bankruptcy proceeding.

On October 24, 2011, the Plaintiffs filed the pending adversary proceeding seeking a judgment that the claims pending in the California Court were nondischargeable on October 24, 2011. On December 9, 2011, ABB filed a motion to lift the automatic stay in the Defendant's bankruptcy case to allow the underlying issues to be litigated in the California Court. Neither the Chapter 7 Trustee nor the Defendant filed a response to ABB's Motion to Lift the Stay. The Court entered an Order Lifting the Automatic Stay, allowing the California Case to proceed, and staying the adversary proceeding on December 29, 2011. On January 8, 2012, the Trustee filed a Motion for Reconsideration of the Court's December 29, 2011, Order. The Defendant joined the Trustee's Motion. The Court held a hearing on the Motion for Reconsideration and entered an Order denying it on February 1, 2012.

On February 10, 2012, the district judge lifted the stay in the California Case. After the stay was lifted, the Defendant ceased participating in the California case, despite multiple court orders directing her to do so. After a hearing on a motion to compel on May 3, 2012, and having determined that neither the Defendant or the Chapter 7 Bankruptcy trustee who "owns" the Defendant's counterclaims intended to participate in the litigation, the California Court entered an order to show cause directing the Defendant to show cause why: (1) her answer should not be stricken; (2) a default should not be entered; and (3) her counterclaims should not be dismissed with prejudice. The California Court ordered the Chapter 7 bankruptcy trustee, Michael A.

Mason, to similarly show cause in regard to the dismissal of Defendant's counterclaims. Neither defendant nor Mr. Mason filed a response to the order to show cause. Accordingly, the California Court recommended that: (1) the Clerk of Court be directed to strike the Defendant's answer to the Plaintiffs' complaint and enter the Defendant's default; and (2) the Defendant's counterclaims be dismissed with prejudice. The order to show case warned that the Defendant's and the Trustee's failures to respond to the order to show cause would constitute consent to those recommendations. On July 2, 2012, the district judge issued an order dismissing Defendant's counterclaims, pursuant to the parties' stipulation.

On August 21, 2012, the district judge issued an order partially adopting the Findings and Recommendations of the magistrate judge. Therein, the district judge directed the Clerk of the Court to: (a) strike the Defendant's answer to the Plaintiffs' complaint; and (b) enter the Defendant's default with respect to the Plaintiffs affirmative claims. On October 3, 2012, the Clerk of the Court entered the Defendant's default pursuant to the district judge's Order.

On September 20, 2012, the Plaintiffs filed a Motion for Default Judgment against the Defendant and served a copy of the motion on the Defendant. The Defendant did not file a response to the Motion for Default Judgment.

On November 19, 2012, the magistrate judge overseeing the California Case issued Findings and Recommendations. On August 8, 2013, the California Court issued its Order, which adopted the Findings and Recommendations with the exception of the attorney fee award, which it reduced to $242,167.50. Specifically, the California Court (1) granted the Plaintiffs' Motion for Default Judgment, (2) entered a default judgment against the Defendant for the breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and fraud claims; and (3) awarded damages.

## APPLICABLE LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

### B. Collateral Estoppel

> The Supreme Court has held that the doctrine of collateral estoppel is applicable in dischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). Federal common law governs the claim-preclusive effect of all federal court judgments. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507–8, 121 S.Ct. 1021, 1027–28, 149 L.Ed.2d 32 (2001). While the federal rule applied to federal judgments in diversity cases generally requires the application of the issue preclusion rules of the state in which the federal diversity court sits, federal issue preclusion law applies to federal judgments in federal question cases. *See id.*

*In re Trantham*, 304 B.R. 298, 305 (B.A.P. 6th Cir. 2004).

Here, the federal district court that decided the California case is in California and has diversity jurisdiction. Accordingly, this Court should apply the issue preclusion rules of the state of California in this case.

> California courts will apply collateral estoppel only if certain threshold requirements are met, and then only when its application furthers the public policies underlying the doctrine. *See Harmon v. Kobrin (In re Harmon),* 250 F.3d 1240, 1245 (9th Cir. 2001). Pursuant to California law, courts may apply collateral estoppel if the following threshold requirements are met:
>
>> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.
>
> *Id.* (internal quotation marks omitted).

*In re Lopez*, 378 Fed. Appx. 610, 611 (9th Cir. 2010).

## ANALYSIS

In determining if the doctrine of collateral estoppel is applicable in this adversary proceeding, the Court must consider the following elements: (1) the issue to be precluded is identical to the issue in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the judgment in the former proceeding is a final judgment on the merits; and (5) the party against whom preclusion is sought must be the same as in the former proceeding. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990), *cert. denied*, 500 U.S. 920 (1991).

### A. Whether the issue sought to be precluded from litigation is identical to that decided in the former proceeding.

#### 1. Breach of Fiduciary Duty Count

With regard to the Breach of Fiduciary Duty count in the California case, the Findings and Recommendations adopted by the California Court specifically provided:

> The undersigned finds that the allegations in plaintiffs' complaint sufficiently support the grant of relief on plaintiffs' fiduciary duty claim in the context of an application for entry of default judgment.
>
> To allege a claim for breach of fiduciary duty under California law, a plaintiff must allege: "(1) existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that breach." Lane v. Vitek Real Estate Industries Group, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) (citing Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (2003)). A director of a corporation has a fiduciary relationship with the corporation and owes the corporation a fiduciary duty. Credit Bureau Connection, Inc. v. Pardini, 726 F. Supp. 2d 1107, 1120 (E.D. Cal. 2010).
>
> Here, plaintiffs have pleaded factual allegations to support claims for defendant's breaches of fiduciary duties to ABB. Plaintiffs have alleged that defendant's role as a director and officer of ABB gave rise to her fiduciary duty to ABB. Plaintiffs have also alleged that defendant failed to accurately inform ABB about MABS' liabilities in advance of the merger, that defendant continued with a "lyophilized platelet project" without ABB shareholder approval, that defendant caused ABB to pay more than $5,000 to her other company, Trianco LLC, without unanimous ABB shareholder approval, and that defendant improperly caused ABB to take on significant liabilities, among other improprieties. Plaintiffs have also alleged damages resulting from these breaches of duty; namely, that defendant's breaches of fiduciary duty to ABB has "depressed the value of ABB," among other damages. Plaintiffs also alleged that their resulting damages exceed $500,000.
>
> The undersigned concludes that the breach of fiduciary duty allegations in plaintiffs' complaint, taken as true for the purpose of evaluating the application for default judgment, justify entry of default judgment insofar as the merits and sufficiency of those allegations are concerned. Specifically, the undersigned concludes that plaintiffs have sufficiently alleged that defendant breached fiduciary duties to ABB. Accordingly, the second and third Eitel factors favor the entry of default judgment as to plaintiffs' fiduciary duty claims.

Under 11 U.S.C. §523(a)(4), a debt will be determined nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." If "fraud or defalcation" is at issue, the Sixth Circuit has adopted a narrow definition of the

requirement that the Debtor act in a "fiduciary capacity" under Section 523(a)(4) in the case of *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997), holding that the term "implies the existence of an express or technical trust relationship," requiring that "the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)."

Because the complaint in the California Case alleged facts sufficient to support a claim based on breach of fiduciary duty, it necessarily shared an identity with the § 523(a)(4) allegations contained in the nondischargeability complaint in this proceeding.

## 2. Misappropriation of Trade Secrets Count

With regard to the Misappropriation of Trade Secrets count in the California Case, the Findings and Recommendations adopted by the California Court specifically provided:

> The undersigned finds that the allegations in plaintiffs' complaint sufficiently support the grant of relief on plaintiffs' trade secret misappropriation claim in the context of an application for entry of default judgment.
> To allege a claim for misappropriation of trade secrets under California law, a plaintiff must allege: (1) they owned trade secrets; (2) that the defendant acquired, disclosed, or used those trade secrets through improper means; and (3) the defendant's actions damaged the plaintiff. Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc., 160 Cal. App. 4th 288, 297 (2008).
> Here, plaintiffs have pleaded factual allegations to support claims for defendant's misappropriation of ABB's trade secrets. Plaintiffs have alleged that ABB possessed two proprietary lists, a customer list and an animal blood donor list, that amounted to trade secrets. Plaintiffs have also alleged that defendant took those lists and turned them over to ABB's competitor. Plaintiffs have alleged that defendant's actions caused actual damages to plaintiffs, including causing ABB to no longer be the "primary supplier" of blood to some of its clients. Plaintiffs have also alleged that defendant's actions were willful and malicious.
> The undersigned concludes that the trade secret misappropriation allegations in plaintiffs' complaint, taken as true for the purpose of evaluating the application for default judgment, justify entry of default judgment insofar as the merits and sufficiency of those allegations are concerned. Specifically, the undersigned concludes that plaintiffs have sufficiently alleged that defendant misappropriated ABB's trade secrets in the form of a customer list and animal

blood donor list. Accordingly, the second and third Eitel factors favor the entry of default judgment as to plaintiffs' claims for trade secret misappropriation.

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity." The exceptions to discharge are to be narrowly construed in favor of the debtor. *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful and malicious. *Grogan v. Garner*, 498 U.S. 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the U.S. Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6). The issue before the U.S. Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6). *Id*. at 59. The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury. *Id*. at 61.

In analyzing the parameters of the language "willful and malicious injury," the Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an

9

additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act,*" not simply "*the act itself.*"

*Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. . . . A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed.'

*Id.* at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in § 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999). The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

*Id.* at 464.

Based on the language used and analysis of the Supreme Court in *Geiger*, the *Markowitz* Court announced the standard of the Sixth Circuit by holding that:

> unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

10

*Id.* (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove either willful or malicious, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted).

Although misappropriation of trade secrets under California law did not require proof that the Defendant acted willfully and maliciously, the Plaintiffs stated that the Defendant acted wilfully and maliciously in their California Case complaint. The Findings and Recommendations adopted by the district court recognized that the Plaintiffs alleged that fact. In addition, when the California Court awarded attorney's fees, the court necessarily determined that the misappropriation was willful and malicious. *See* Cal. Civ. Code § 3426.4 (requiring a court to find that the misappropriation was willful and malicious before it may award attorney fees). Because the complaint in the California Case alleged facts sufficient to support a claim based on misappropriation of trade secrets and that the Defendant acted willfully and maliciously

11

(and the court also awarded attorney's fees), it necessarily shared an identity with the § 523(a)(6) allegations contained in the nondischargeability complaint in this proceeding.

### 3. Fraud Count

With regard to the Fraud count in the California case, the Findings and Recommendations adopted by the California Court specifically provided:

> The undersigned finds that the allegations in plaintiffs' complaint sufficiently support the grant of relief on plaintiffs' fraud claim in the context of an application for entry of default judgment.
> "Under California law, the indispensable elements of a fraud claim include (1) a false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages." <u>Craigslist. Inc.,</u> 694 F. Supp. 2d at 1060 (citing <u>Vess v. Ciba-Geigy Corp. USA</u>., 317 F.3d 1097, 1 105 (9th Cir. 2003) (internal quotations and citation omitted). Pursuant to Rule 9 of the Federal Rules of Civil Procedure, a plaintiff must allege a fraud claim with particularity. Fed. R. Civ. P. 9(b).
> Here, plaintiffs have pleaded factual allegations to support fraud claims against defendant. Plaintiffs have alleged that defendant made false representations to plaintiffs about the extent of MABS' liabilities, the existence of a lease with Pitt County Development Commission, and the fact that a grant was supposed to pay for the construction of a laboratory clean room at the leased premises. Plaintiffs have alleged that defendant knew these and other representations were false. Plaintiffs also alleged that defendant increased MABS' liabilities "[a]fter the [m]erger" by secretly taking on an additional loan from Independent Bank in MABS' name. Plaintiffs have alleged that they justifiably relied on defendant's representations about MABS' liabilities, the lease, the clean room's being funded by a grant, and other representations, and that in reliance upon these representations plaintiffs executed the Merger Agreement and made various improper payments that defendant directed ABB to pay. Plaintiffs have alleged resulting damages, including incurring improperly-incurred debts and obligations of MABS. Plaintiffs have also alleged that the intentional misrepresentations by defendant warrants an award of punitive damages.
> ` The undersigned concludes that the fraud allegations in plaintiffs' complaint, taken as true for the purpose of evaluating the application for default judgment, justify entry of default judgment insofar as the merits and sufficiency of those allegations are concerned. Specifically, the undersigned concludes that plaintiffs have sufficiently alleged that defendant committed fraud. Accordingly, the second and third <u>Eitel</u> factors favor the entry of default judgment as to plaintiffs' claims for fraud.

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). A discharge under section 727 does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert,* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

The elements necessary to establish that a debt is nondischargeable under § 523(a)(2)(A) "mirror the elements of common law fraud." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373-74 (9th Cir. B.A.P. 1997). Because the complaint in the California Case alleged facts sufficient to support a claim based on common law fraud, it necessarily shared an identity with the § 523(a)(2)(A) allegations contained in the nondischargeability complaint in this proceeding.

### B. Whether the issue was actually litigated and necessarily determined

Under California law, default judgments are considered:

> conclusive to the issues tendered by the complaint as if it had been rendered after answer filed and a trial had on the allegations denied in the answer … Such a judgment is res judicata as to all issues aptly pleaded in the complaint and

defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.

*Newsom v. Moore (In re Moore)*, 186 B.R. 962, 971 (Bankr. N.D. Cal. 1995) (citations omitted). Therefore, a default judgment can satisfy the "actually litigated" requirement of issue preclusion. *See, e.g., Fernandez v Miniefee (In re Miniefee)*. 2012 Bankr. LEXIS 4138, *7-8 (Bankr. S.D. Cal. Aug. 24, 2012) (concluding that the issues were "actually litigated" where a default entered after defendant's answer was struck for failure to appear at a settlement conference); *Tatung Company. Ltd. v. Houng (In re Houng)*, 2012 Bankr. LEXIS 4295, *7-8 (Bankr. C.D. Cal. Aug. 1, 2012), *aff'd* 499 B.R. 751 (Bankr. C.D. Cal. 2013) (determining that the issues were "actually litigated" where defendant's answer was stricken as a discovery sanction by arbitrator). However, for a default judgment to be actually litigated, the material factual issues must have been both raised in the pleadings and necessary to uphold the default judgment. *Id*. at 971-72; *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1247 (9th Cir. 2001).

The California Case complaint alleged facts supporting the Plaintiffs' claims that the Defendant committed fraud, misappropriated trade secrets, and breached her fiduciary duty. In entering the default judgment, the California Court expressly found that the Plaintiffs presented evidence demonstrating that the Defendant committed fraud, misappropriated trade secrets, and breached her fiduciary duty. Thus, the factual issues of those counts were raised in the pleadings and were necessary to the default judgment. As a result, the California Case complaint was "actually litigated" and necessarily decided. *Id*.; *see In re Younie*, 211 B.R. 374-75.

C. <u>Whether the judgment in the former proceeding is a final judgment on the merits and the whether the party against whom preclusion is sought is the same as in the former proceeding.</u>

The application of collateral estoppel requires that the "the decision in the former proceeding must be final and on the merits" *Harmon*. 250 F.3d at 1245. "A 'final decision'

14

generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*. 324 U.S. 229, 233 (1945), *quoted by In re Mack*. 2007 Bankr. LEXIS 4833, *10 (9th Cir. B.A.P. Mar. 28, 2007).

This element is met because the California Court Order was a final order on the merits. There was no appeal of that final order and the appeals period has since passed.

The Defendant concedes that the party against whom preclusion is sought is the same as in the former proceeding.

Accordingly, those two elements have been met.

### D. Policy Considerations

The last issue the Court must consider in determining whether or not to apply collateral estoppel in this case is whether the policy considerations support application of the doctrine.

> Trial courts have "broad discretion" in determining when to apply issue preclusion. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In California, courts do not apply issue preclusion automatically or rigidly; rather, they are permitted to decline to give issue preclusive effect to prior judgments in deference to countervailing considerations of fairness. *See Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 1226 (1990); *see also People v. Seltzer,* 101 Cal. Rptr. 260, 262 (App. Dep't Super. Ct. 1972) (collecting cases). The courts balance the need to limit litigation against other factors to determine whether the application of collateral estoppel is fair. *See Lucido,* 272 Cal. Rptr. 767, 795 P.2d at 1226–27. "Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy." *Id.* at 1227.

*In re Lopez*, 378 F. App'x at 613.

The Defendant argues that the Court should not apply collateral estoppel in this case because she did not have the money to continue the litigation in the California Court case. She argues that she could not find an attorney to represent her on a contingency basis and she did not

have the funds to hire an attorney otherwise. The Plaintiffs argue that the Court should apply collateral estoppel in this case because (1) the Defendant had the opportunity to oppose ABB's Motion for Relief from Stay in her bankruptcy case, but she failed to do so and failed to appeal this Court's decision on that matter; (2) the Defendant had the opportunity to participate in the litigation in the California Court case, with or without an attorney representing her; (3) application of collateral estoppel would preserve court resources and promote judicial economy; (4) application of collateral estoppel would preserve the integrity of this Court's decision on the Motion for Relief from Stay and the California Court's decision as to liability and damages in the California case; and (5) the Plaintiffs would be prejudiced if they were forced to re-litigate this matter in this Court.

Although collateral estoppel applies to default judgments under the California law, this Court has broad discretion in determining whether or not to apply collateral estoppel in this case. The Court is persuaded that the policy considerations greatly favor the Plaintiffs in this case. The Plaintiffs have taken the appropriate steps to litigate these issues both in this Court, when ABB sought relief from the stay to allow the litigation in the California case to continue, and in the California court, when it sought a determination as to the Defendant's liability and damages. The California court decided the issues of the Defendant's liability and damages and the Plaintiffs would be greatly prejudiced if they were forced to re-litigate these issues. The policy considerations in this case do not support the Court giving the Defendant another opportunity to litigate these issues.

Moreover, to hold otherwise would negate this Court's previous decision to grant the Plaintiffs' Motion for Relief from Stay. Allowing the Defendant to now enter this Court and re-litigate issues properly decided by the California Court is of added expense to the Plaintiffs and

contrary to the direction given to this Court to use judicial resources properly. Finally, if the Defendant did not have sufficient resources for the California Case, there is no reason to think that, if this Court had denied the Plaintiffs' Motion for Relief from Stay, a different result would have occurred in the instant adversary proceeding.

## CONCLUSION

For the reasons set forth herein, the Court determines that collateral estoppel applies in this case and that the Plaintiffs' Motion for Summary Judgment is granted. Counsel for the Plaintiffs shall prepare and present an appropriate order.

Signed on April 24, 2014

```
                                    /s/ Daniel S. Opperman
                                    Daniel S. Opperman
                             United States Bankruptcy Judge
```